# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00414-CV

**Glenn Allen Hegar, Jr., Texas Comptroller of Public Accounts, Appellant**

v.

**Arnulfo P. Alcorta; Jose Abram Alcorta; Reyes Alcorta; Armando Alvarado, Jr.; David A. Arizmendi; Adela A. Bautista; Guadalupe Cantu, Jr.; Jose Angel Gomez Cantu; Julian Jesus Torres Cantu; Olga Cantu; Olivia T. Cantu; Hortencia Cantu Castillo; Carmelo Cordero; Guadalupe Torres Corona; Margarita Diaz; Maria Torres Galvan; Frances A. Garcia; Guadalupe S. Gonzales; Julia C. Gonzalez; Maria Christina Gonzales; Teresa Arizmendi Gordon; Pedro T. Guajardo; Juanita T. Hernandez; Margarita T. Hernandez; Brandon R. Hugonnett; Christopher Hugonnett; Jose Luis Hugonnett; Manuel Hugonnett; Maria Guadalupe Hugonnett; Ricardo Guillermo Hugonnett; Rolando R. Hugonnett; Shawn Hugonnett; Cleofas Torres Juarez; Dora Alicia A. Medina; Aurora Diana Cantu Mejia; Rosalinda Cantu Pena; Edwardo Ramos, Jr.; Eloyd D. Ramos; Linda A. Rios; Carmen Rodriguez; Maria Del Rosario Rodriguez; Carlos Salazar; Velma Thies; Beatris Torres; Cosme Torres, Jr.; James Torres; Jose Angel Torres; Jose Luis Torres; Marcelina Torres; Raul Torres; Alfredo R. Torrez;, Miguel Torrez; Isabel C. Vasquez; Mary T. Venable; and Irma Salazar Villanueva, Appellees**

---

**FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-17-006831, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In a prior interlocutory appeal in this lawsuit, we concluded the trial court correctly denied the Comptroller's plea to the jurisdiction with respect to claims brought under Texas Property Code Section 74.506. *See Hegar v. Alcorta,* No. 03-19-00348-CV, 2020 WL 2047920 (Tex. App.—Austin Apr. 29, 2020, no pet.) (mem. op.) (*Alcorta I*). The Comptroller now seeks

interlocutory review of the trial court's denial of his second plea to the jurisdiction. We conclude that (1) because the Comptroller's second plea to the jurisdiction does not raise new and distinct grounds for relief, the pleading constitutes a motion to reconsider the denial of his prior plea to the jurisdiction, and (2) time for interlocutory appeal from the prior plea to the jurisdiction has expired. Accordingly, we dismiss this appeal for lack of jurisdiction.

## BACKGROUND

In 2017, Arnulfo Alcorta and 53 others (collectively, the Alcortas) sued the Comptroller under Section 74.506, challenging the Comptroller's purported failure to timely decide or pay their claims to mineral royalties held in the Unclaimed Money Fund. *See* Tex. Prop. Code § 74.506(b) (waiving sovereign immunity if Comptroller does not decide claim for mineral royalties within 90 days). The Alcortas pled that they filed claims for mineral royalties with the Comptroller's office on September 8, 2017, and March 12, 2018, that the Comptroller did not decide or pay within the statutory time period.[1]

### *The amended plea and its appeal*

The Comptroller filed an original answer and plea to the jurisdiction that argued that the Alcortas did not file a claim to enable the State's waiver of sovereign immunity and the Alcortas lacked standing to sue. The Comptroller subsequently reasserted these issues in his first amended plea to the jurisdiction (amended plea). The Comptroller specifically argued that the Alcortas did not file a claim on September 8, 2017, that would trigger the State's waiver of

---

[1] The Alcortas filed their original petition in 2017 and amended it several times, adding claimants.

sovereign immunity under Section 74.506 and confer jurisdiction on the trial court. The Comptroller alleged that

> [w]hile Plaintiffs "and/or their representatives" may have visited the office of the Comptroller on September 8, 2017, they did not file anything. The Comptroller logs each unclaimed property claim, whether presented in paper or electronic form, and there is no record of Plaintiffs filing anything "on or about September 8, 2017."

The Comptroller also argued that the Alcortas lacked standing to sue because they were not "aggrieved by the *decision of a claim filed under"* Section 74.506.

To support his amended plea, the Comptroller submitted an affidavit from Bryant Clayton, Assistant Director of Unclaimed Property for the Comptroller, dated April 2019. Clayton swore that there was no record of any of the Alcortas appearing at the Comptroller's office on September 8, 2017, but "it [wa]s possible that Plaintiffs or someone representing them appeared before an employee of the Unclaimed Property Division on or about September 8, 2017, and no record was made of that visit." Clayton also averred that "there [wa]s no record of any claim filed by any plaintiff on or about September 8, 2017."[2]

Clayton provided a second affidavit, dated May 2019, where he stated that the Unclaimed Property Division is on the sixth floor of the Lyndon Baines Johnson State Office Building (LBJ Building). Clayton swore that all visitors to the LBJ Building, including persons seeking assistance with filing an unclaimed property claim, must check in with security and be escorted while in the building. Clayton swore that the Comptroller maintained an electronic visitor's log showing all visitors to the building, and he attached a copy of the EasyLobby visitor

---

[2] Clayton also provided deposition testimony as the Comptroller's designated corporate representative.

report for September 2017 to his affidavit. Clayton stated that the EasyLobby visitor report did not reflect that any of the Alcortas appeared at the Comptroller's office on or about September 8, 2017.

The Comptroller submitted the LBJ Building September 2017 EasyLobby visitor report through a business-records affidavit from Shane Hill, the Comptroller's Assistant Manager for Support Services. The Comptroller argued that the September 2017 EasyLobby visitor report demonstrated that the Alcortas did not "sign[] in" to the Comptroller's office during September 2017.

In April 2019, the Alcortas submitted declarations from Margarita Hernandez and Oran Venable. Hernandez averred that, on September 8, 2017, she and Venable "walked into the office of the Texas Comptroller" "and sought to file a claim, and did file a claim" with the Comptroller for payment of mineral proceeds "held in the Unclaimed Money Fund." Hernandez declared that "no one from the Comptroller's office" asked her or Venable "for any additional supporting documentation," or assisted Hernandez or Venable "in any meaningful fashion." Hernandez also averred that, on March 12, 2018, she and the Venables (Oran and his wife, Mary) walked into the office of the Texas Comptroller and filed another claim with the Comptroller for payment of mineral proceeds held in the Unclaimed Money Fund.

Venable averred that he had personal knowledge of his "two visits to the office of the Texas Comptroller" when the Alcortas "filed their claims which are at issue in this case." Venable declared that he, his wife, Mary Venable, and her sister, Hernandez, filed "another claim with the Texas Comptroller" on March 12, 2018, and he further described the "the two claims" that the Alcortas filed.

4

After considering the record and the arguments of counsel, the trial court denied the Comptroller's amended plea with respect to claims under Section 74.506 in May 2019. The Comptroller then filed the interlocutory appeal that resulted in our decision in *Alcorta I*.[3]

In his *Alcorta I* briefing, the Comptroller argued that, because the Alcortas filed no claim to trigger the waiver of sovereign immunity, the trial court lacked jurisdiction.[4] The Comptroller specifically argued that there was no evidence that the Alcortas filed a claim on September 8, 2017, and he cited the September 2017 EasyLobby visitor report as support. The Comptroller also argued that six of the Alcortas lacked standing to participate in the lawsuit because they were not "aggrieved" by non-payment of a claim. In response, the Alcortas "[di]d not admit that no claim was made in 2017."

In *Alcorta I,* we overruled the Comptroller's argument and concluded that the trial court possessed jurisdiction over the Alcortas' Unclaimed Property Act claim. *Alcorta I,* 2020 WL 2047920, at *3. We recognized that "[t]he Alcortas alleged that they filed a claim to the royalties in September 2017 and sued the Comptroller after the claim was not decided." *Id.* at *2 & n.3 (noting that we based our summary on Alcortas' pleadings and attached affidavits and other evidence admitted at trial court hearing on plea). The Alcortas subsequently appeared at the Comptroller's office and "file[d] a new claim" in March 2018. *Id.* We applied facts concerning

---

[3] In *Alcorta I,* we concluded that the trial court correctly denied the Comptroller's plea to the jurisdiction with respect to the Alcortas' claim under Section 74.506, because a fact issue existed concerning whether the Alcortas filed a claim with the Comptroller that was in compliance with the statute. *Hegar v. Alcorta,* No. 03-19-00348-CV, 2020 WL 2047920, at *5 (Tex. App.—Austin Apr. 29, 2020, no pet.) (mem. op.) (analyzing March 2018 Claim).

[4] We take judicial notice of the record and briefing in *Alcorta I. See Reynolds v. Quantlab Trading Partners US, LP,* 608 S.W.3d 549, 558 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (explaining that appellate court may take judicial notice of its own records in same or related proceedings involving same or nearly same parties).

5

the Alcortas' March 2018 claim in our statutory analysis, overruled the Comptroller's issues and concluded that there was no reversible error in the trial court's interlocutory order. *See id.* at *4–6.

The Comptroller thereafter filed a motion for rehearing and a motion for en banc reconsideration of *Alcorta I*, arguing in both motions that the March 2018 claim did not qualify as a statutory claim. The Comptroller did not raise in the motion for rehearing or the motion for en banc reconsideration the issue that there was purportedly no evidence that the Alcortas filed a claim on September 8, 2017. We denied both motions.

### *The second plea and present appeal*

On June 17, 2021, the Comptroller filed what he titled a second plea to the jurisdiction (second plea), alleging that the court lacked jurisdiction because the Alcortas did not file a claim in September 2017 that could trigger the waiver of sovereign immunity under Section 74.506. The Comptroller acknowledged that his "First Amended Plea alleged [] that Plaintiffs had failed to file a claim in September 2017 . . ." The Comptroller also reasserted the allegation that six of the Alcortas purportedly are not "person[s] aggrieved by the decision of a claim."

In support of his second plea, the Comptroller attached the LBJ Building's September 2017 EasyLobby visitor report that had been considered with his amended plea. The Comptroller also attached the EasyLobby visitor report for September 8, 2016, which purportedly reflected that the Venables and Hernandez entered and left the LBJ building that day.[5]

---

[5] The Comptroller submitted the EasyLobby visitor report with his amended plea through a 2019 business-record affidavit of Shane Hill, Assistant Manager for Support Services. This affidavit referred to Shane Hill as "her." The Comptroller submitted the EasyLobby visitor report with his second plea through a business-record affidavit of Shane A. Hill, Sr., "the Comptroller's Risk Manager since 2013." The signatures on both business-record affidavits appear similar. It is unclear if these affiants are the same person.

6

The Comptroller attached additional evidence that had been considered with his amended plea, including: (1) Hernandez's and Venable's April 2019 declarations; and (2) Clayton's April 2019 affidavit attesting that the Comptroller had no record of a claim filed by the Alcortas on September 8, 2017, but that it was possible that the Alcortas appeared before a Comptroller's employee that day and no record was made.

The Alcortas responded that issues the Comptroller raised in his second plea had been briefed in his amended plea and previously ruled upon by the trial court. In support of their response, the Alcortas attached new July 2021 sworn declarations from the Venables and Hernandez. All three declared that they walked into the Comptroller's office on September 8, 2016, to obtain information for filing a claim, and that Venable and Hernandez walked into the office again on September 8, 2017, to file a claim. Venable stated that all three of them walked into the Comptroller's office on September 8, 2017, and left a claim with the person at the front counter.

At the hearing on the second plea, the Comptroller argued that the trial court must determine if the Alcortas made "a claim for unclaimed property on September the 8th, 2017, as they have alleged in their complaint and in several affidavits . . ." The Comptroller stated that in *Alcorta I,* this Court recognized that the Alcortas "alleged they filed a claim in September 2017." The Comptroller argued that the LBJ Building EasyLobby visitor reports were business records and newly discovered evidence.

The Alcortas argued that the Comptroller had asserted the same argument in his amended plea, which the trial court had denied. The Alcortas maintained that this Court had affirmed that ruling, which necessarily included the trial court's ruling on this issue, because the Alcortas had declared in response to the Comptroller's amended plea that they filed a claim on

7

September 8, 2017, and the Comptroller's designated corporate representative, Clayton, had averred that it was possible that the Alcortas came in and filed something. The Alcortas also argued that the EasyLobby visitor report was not newly discovered evidence because the Comptroller had possessed the report for five years. The Alcortas maintained that they were not obligated to produce copies of their September 2017 claim because the Comptroller never sent a request for production or any discovery in the case.

The only witness who testified at the hearing on the second plea was the Comptroller's Risk Manager, Shane A. Hill, Sr. Through Hill, the Comptroller introduced the 2016 LBJ Building EasyLobby visitor report submitted with the second plea that reflected the Venables and Hernandez visited the Unclaimed Property Division on September 8, 2016. Hill testified that the LBJ Building EasyLobby visitor report was kept in the course of a regularly conducted business activity.

Although Hill testified that the Venables and Hernandez did not visit the LBJ Building on September 8, 2017, he did not ask any employees if they spoke with the Venables and Hernandez on that day.[6] Hill testified that it was possible the Venables and Hernandez entered the LBJ Building on September 8, 2017, told the receptionist that they wanted to deliver documents to the unclaimed money fund, and an employee came to the front desk to retrieve the documents. Hill agreed that in such a circumstance, the Venables' and Hernandez's names would not appear in the EasyLobby visitor report. During the hearing, the Alcortas relied on the Venables' and Hernandez's new July 2021 declarations, which they alleged were consistent with the declarations filed in the amended plea.

---

[6] It is not clear if Hill was testifying about any of the Alcortas during this portion of cross-examination, or about Hernandez and the Venabales specifically.

8

At the conclusion of the hearing, the trial court noted that the case was over three years-old and the Comptroller could have used the discovery process and the court's prior hearing on the amended plea to explore the Alcortas' September 2017 claim. Counsel for the Comptroller acknowledged that he could have examined the issue through discovery and that he did not send a request for production seeking the September 8, 2017 claim. The Alcortas pointed out that the Comptroller also chose not to depose Venables and Hernandez. The trial court denied the second plea.[7]

### *This appeal*

In this second interlocutory appeal, the Comptroller argues that the trial court erred in denying the second plea because the evidence showed that the Alcortas did not file a claim on September 8, 2017, that would trigger a waiver of sovereign immunity under Section 74.506 and confer jurisdiction on the court. The Comptroller acknowledges that he previously argued in his amended plea that the court did not have jurisdiction because there was no record that the Alcortas filed a claim on September 8, 2017. The Comptroller also reasserts the same argument from *Alcorta I* concerning six of the Alcortas not being proper parties to this action.[8]

The Alcortas respond that the Comptroller may not relitigate in the second plea the same issues using the same evidence that he presented in his amended plea. The Alcortas argue that because this Court had a duty to consider subject-matter jurisdiction sua sponte, we impliedly

---

[7] The trial court prepared findings of fact and conclusions of law in response to the Comptroller's request.

[8] In anticipation of the Alcortas' response brief, the Comptroller also asserts a preemptive argument that the March 2018 claim did not trigger a waiver of sovereign immunity and confer jurisdiction on the court.

resolved the Comptroller's complaint about the September 2017 claim in *Alcorta I*. The Alcortas maintain that the September 2016 EasyLobby visitor report is not newly discovered evidence, and the report is not relevant to whether the Alcortas filed a claim in September 2017.

## APPLICABLE LAW

Generally, Texas appellate courts have jurisdiction to hear appeals only from final judgments. *See City of Houston v. Estate of Jones,* 388 S.W.3d 663, 666 (Tex. 2012) (per curiam). A party may, however, appeal an interlocutory order that denies or grants a government entity's plea to the jurisdiction. Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). This interlocutory appeal is an accelerated appeal that must be filed within twenty days after the order is signed. *See* Tex. R. App. P. 26.1(b), 28.1(a). Although Section 51.014(a)(8) does not expressly limit a party to one interlocutory appeal, the right to successive interlocutory appeals is not without limits. *See Scripps NP Operating, LLC v. Carter,* 573 S.W.3d 781, 789 (Tex. 2019); *see also Rusk State Hosp. v. Black,* 392 S.W.3d 88, 95 (Tex. 2012) (explaining that Section 51.014(a) is strictly construed because it is limited exception to general rule that party may appeal only from final judgments or orders).

When a governmental unit files successive pleas to the jurisdiction, an appellate court's jurisdiction for an interlocutory appeal of the order denying the latter plea can turn on whether the appellate timetable actually ran from the order denying the original plea. *City of Magnolia 4A Econ. Dev. Corp. v. Smedley,* 533 S.W.3d 297, 300 (Tex. 2017) (per curiam). To reset the appellate clock such that the governmental entity may take an interlocutory appeal from the latter order, the latter plea must be "new and distinct" from the earlier plea. *Id.* at 301; *see Jones,* 388 S.W.3d at 667 (noting that permitting successive interlocutory appeals that are not new

10

and distinct would eliminate clear twenty-day deadline in Rule 26.1(b) and work against statutory purpose of judicial efficiency).  If the latter plea is not new and distinct, then it, despite its name, is merely a motion for reconsideration of the denial of the earlier plea.  *Smedley,* 533 S.W.3d at 301.  To determine whether the latter plea is new and distinct, a court should compare the substance and procedural nature of the two pleas.  *See id.*  A second plea to the jurisdiction that makes new arguments to support a previously asserted ground is simply a motion to reconsider.  *Id.*; *see also Jones,* 388 S.W.3d at 667 (concluding that City's new reason why it believed its immunity had not been waived was change in "form without substance" that did not reset appellate clock).

### ANALYSIS

Based on our review of the record, the Comptroller's second plea was a change in "form without substance" that did not warrant resetting the appellate clock.  *Smedley,* 533 S.W.3d at 300.   The Comptroller did not raise "new and distinct" grounds for relief in his second plea. *See id.* at 301.   The Comptroller acknowledges that his "First Amended Plea alleged [] that Plaintiffs had failed to file a claim in September 2017" that could trigger a waiver of sovereign immunity under Section 74.506.  The second plea was no different in substance on this score because it too alleged that business records demonstrated that the Alcortas did not file a claim in September 2017 and thus that "sovereign immunity ha[d] not been waived, and the suit should be dismissed." *See Jones,* 388 S.W.3d at 667 (concluding that City's amended plea that purported to assert new reason why it believed immunity had not been waived raised no new grounds and was motion to reconsider.)  The Comptroller also argued in both pleas that six of the Alcortas were not authorized to file an appeal under Section 74.506 because they are not persons aggrieved by the decision of a claim.

11

Moreover, the trial court examined the same or substantially similar evidence to consider the amended and second pleas. *See Smedley,* 533 S.W.3d at 302 (concluding that later motion for summary judgment was easily distinguished from original plea to the jurisdiction based on extensive evidence that trial court considered for first time). The September 2016 EasyLobby visitor report at the core of the second plea was not newly discovered evidence unknown or unavailable to the Comptroller when he filed the first plea. Indeed, the Comptroller submitted the September 2017 EasyLobby visitor report for the LBJ Building with his first plea, and he argued that the records controverted the Alcortas' declarations and demonstrated that the Alcortas did not sign into the Comptroller's office in September 2017.

The trial court considered the April 2019 affidavit and deposition testimony of Clayton, the Comptroller's designated corporate representative, when it denied both the amended and second pleas. Clayton averred that there was no record of a claim filed by the Alcortas on September 8, 2017, but it was possible that the Alcortas appeared before a Comptroller employee that day and no record was made of the visit.

The court also considered the April 2019 sworn declarations from Venable and Hernandez when it denied the amended and second pleas. The declarations reference that Venable and Hernandez made "two visits" to the Comptroller's office to file "two claims," and state that Venable and Hernandez walked into the Comptroller's office and filed a claim on September 8, 2017. The declarations that these parties submitted in 2021 are substantially similar to their 2019 affidavits. Although the 2021 affidavits include that the Alcortas walked into the Comptroller's office on September 8, 2016, to obtain information, this fact has no bearing on jurisdiction.

Finally, evidence that the Comptroller presented in support of its second plea was not material to the court's jurisdictional analysis. *See Smedley,* 533 S.W.3d at 302. The Comptroller did not establish a jurisdictional fact by the September 2016 EasyLobby visitor report, and the trial court had already considered the September 2017 EasyLobby report when analyzing the amended plea to the jurisdiction.

**CONCLUSION**

While subject-matter jurisdiction can be raised at any time, it can only be raised before a court of competent jurisdiction. *See Texas Comm'n on Env't. Quality v. Bosner-Lain,* 438 S.W.3d 887, 891 n.1 (Tex. App.—Austin 2014, no pet.) (citing *Jones,* 388 S.W.3d at 667). Under *Smedley,* the issues in the Comptroller's second plea were not sufficiently new and distinct from the issues previously presented to render the ruling on the second plea independently appealable. *See Smedley* 533 S.W.3d at 301. The pleas alleged the same jurisdictional issues and concerned the same relevant evidence. We thus conclude that the second plea was a motion to reconsider the previous denial of the amended plea. *See Jones,* 388 S.W.3d at 667. Because the Comptroller filed his notice of appeal more than twenty days after the trial court signed the order denying the amended plea, we lack jurisdiction over this appeal. *See* Tex. R. App. P. 26.1(b), 28.1(a); *Smedley,* 533 S.W.3d at 300, 302.

For the foregoing reasons, we dismiss this appeal for want of jurisdiction. *See* Tex. R. App. P. 42.3(a).

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Dismissed for Want of Jurisdiction

Filed:   August 18, 2023